MoKinney, J.,
delivered the opinion of the Court.
The complainants seek to recover from the defendant, Grissom, a female slave, named Sally, and her children, which are claimed to be the property of Claiborne.
The slave Sally, was the property of Claiborne Wilson, the father of the complainants, who died in 1842, in Smith *523 County. By his Will, the slave, Sally, with other property, was given to his wife, during her life, or widowhood, with remainder to her children.
The widow of testator, Margaret Wilson, was qualified as administratrix, with the Will annexed, of the estate, in November, 1842.
In 1855, Margaret Wilson, the widow and administra-trix, presented a petition to the Circuit Court of Smith, in which she made the children of the testator co-plaintiffs, asking to have the slave, Sally, sold, on the ground, that, by reason of her bad temper, violent passions, immoral habits, and refusal to submit to the discipline and commands of the petitioner, she could not be managed; and petitioner and her children, most of whom were under age, were afraid to keep her in the family.
The slave had given birth to several children, before the filing of the petition — three of whom were then living. Eor the foregoing reasons, it was alleged in the petition, that it would be for the interest of the owners of the remainder-interest, as well as petitioner, to have the slave sold, and the proceeds divided — the widow agreeing in her petition, to take a child’s part of the same.
Upon the proof of two witnesses, one of whom, was the defendant, Grissom, that owing to the character, temper and habits of the slave, it would be for the manifest benefit of the owners, that she should be sold and sent off from the neighborhood, it was decreed by the Court, that she should be sold ; and on the 12th of May, she was accordingly sold to the defendant, Grissom, (the witness, upon whose testimony, mainly, the sale was ordered, and who lived in little over a mile of the residence of petitioner,) for the sum of $700.
*524 The slave is admitted, in the petition, to have been a capable, valuable servant, aside from her temper, dispositions, and immoral habits. She has given birth to several other children, since the purchase by the defendant.
Various questions were discussed at the bar, t We will confine our consideration of the case to the question, whether the Circuit Court had jurisdiction to decree the sale.
By the Act of 1827, ch. 61, sec. 2, all sales of slaves made contrary to the provisions of that Act, by executors or administrators, are expressly declared to be void. Was this a sale under the provisions of that Act? Clearly not. It is true, that it is incidentally stated in the petition, that the widow was the administratrix of the estate; but the petition is not presented by her, in that capacity. On the contrary, it is an application by her, in her own right, as owner of the life-interest in the slave, in which she joins with her the owners of the remainder-interest, as co-plaintiffs to have the slave converted, and the proceeds equally divided, solely for the reason that the slave had become unmanageable.
The simple statement of the ground of the application demonstrates that the case is not within the Act of 1827, and, consequently, the Circuit Court had no jurisdiction. The Circuit Court, by its present organization, possesses no equity jurisdiction, except such as is expressly conferred upon it by Statute, and to maintain its jurisdiction, a state of facts must be shown to exist, falling within the provisions of the Statute.
Upon the whole record, it is manifest, that the sale of the slave, so peculiarly valuable for her physical capacity of child-bearing, so far from being for the benefit of the *525 owners of the remainder-interert, was an enormous sacrifice, though it may have been otherwise, as to the life-owner.
We perceive no just ground of distinction, under the Statute, between the sale of a remainder-interest in slaves and land. But the present case does not call for a discussion of this question.
Nor, need we consider the question, at present, whether a Court of Chancery might not have been competent to grant the relief sought by the petition.
The decree of the Chancellor will be reversed, and a decree rendered in favor of complainants, restoring them to their rights in said slave and her increase, as they stood before said sale.
But the complainants will be required to refund the purchase money, with interest, in the proportions in which it may have been actually received by them respectively.